IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CURVAN WAYNE GILKES,** | : | **CIVIL ACTION NO. 1:03-CV-1417** |
| **Petitioner** | : | **(Judge Conner)** |
| v. | : | |
| **TOM RIDGE and BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT,** | : | |
| **Respondents** | : | |

### MEMORANDUM

Presently before the court on remand from the United States Court of Appeals for the Third Circuit is a petition for review which presents a genuine issue of material fact regarding the paternity of petitioner Curvan Wayne Gilkes ("Curvan"). For the reasons that follow, the court finds by a preponderance of the evidence that Ronald Everton Gilkes ("R.E. Gilkes") is not Curvan's biological father.

### I.   Statement of Facts[1]

The dispute in this case centers around an order of removal that issued after Curvan was convicted in the New York Supreme Court of the criminal sale of a controlled substance in the fifth degree. See Gilkes v. Attorney Gen. of U.S., 226 F. App'x 242, 244-45 (3d Cir. 2007). Curvan, who entered the United States as a lawful

---

[1] The circuitous procedural and factual history of this case is set forth at length in the Third Circuit opinion Gilkes v. Attorney Gen. of U.S., 226 F. App'x 242 (3d Cir. 2007), familiarity with which is presumed.

permanent resident in 1967, was born in Barbados on July 12, 1955. His mother, Gloria Anita Gilkes ("Gloria"), is a United States citizen. She was married to R.E. Gilkes, a citizen of Barbados, at the time of Curvan's birth. R.E. Gilkes is named as Curvan's father on his birth and baptismal certificates. Id. at 243-45; (Doc. 64, Exs. 1, 2, 6). On June 15, 1956, R.E. Gilkes filed a petition for dissolution of marriage, alleging that Gloria had been committing adultery since March of 1954. R.E. Gilkes' petition acknowledged that Gloria had given birth to three children during the course of their marriage. R.E. Gilkes admitted that he was the father of two of those children, namely, Claudette Izolo Gilkes and Hugh Rodney Rubinstein Gilkes, but did "not admit" that he was Curvan's father. He also sought custody of Claudette and Hugh but not of Curvan. (Doc. 61, Ex. A.) Ultimately, the Barbados court granted the petition on grounds of adultery and awarded custody of Claudette and Hugh to R.E. Gilkes. (Doc. 61, Exs. B, C.) Recent DNA testing has established that Curvan and Hugh are not patrilineal relatives. In other words, they do not share the same father.[2] (Doc. 61, Ex. E.) Because R.E. Gilkes died in January 1999, a genetic determination of whether R.E. Gilkes fathered Curvan or Hugh has not been conducted.

---

[2] During the course of the February 25, 2008 evidentiary hearing, the government stipulated that the DNA evidence was properly collected from both Curvan and Hugh Gilkes and that the Hugh Gilkes whose DNA was collected is the same Hugh Gilkes who is identified in the 1956 divorce petition filed by R.E. Gilkes. (See Feb. 25, 2008 Hr'g Tr. at 9, 12-13.)

On August 19, 2003, Curvan filed a petition for writ of habeas corpus, alleging that he is a derivative citizen of the United States by virtue of his mother's citizenship. (See Doc. 1.) In the petition, Curvan claimed that his mother "married [his] father on 3/22/1945."[3] (Id. at 3.) In a sworn affidavit in support of the petition, Gloria stated: "I took care of Curvan from the time he was born until he was eighteen (18) years old with no help from his father, *Ronald Everton Gilkes*." (See Doc. 9 (emphasis added); see also Doc. 64, Ex. 3.) Ultimately, this court denied Curvan's petition on the basis that he failed to qualify for derivative citizenship under any of the statutory sections he asserted. (See Doc. 34.) On appeal, Curvan argued for the first time that he was entitled to derivative citizenship under 8 U.S.C. § 1409(c). The Third Circuit remanded for consideration of this statute on April 26, 2005. (See Doc. 43.) Shortly thereafter, Gloria filed an affidavit in a Barbados court, stating: "Ronald Everton Gilkes is not the father of my son Curvan Wayne Gilkes." (Doc. 61, Ex. D.) After the REAL ID Act became effective, this court transferred the case to the Third Circuit for evaluation as a "petition for review." (See Doc. 49.) The Third Circuit determined that a genuine issue of material fact regarding Curvan's paternity remained, so it remanded the case for the limited purpose of making this factual determination. (See Doc. 51.) Having conducted an evidentiary hearing on February 25, 2008, the issue is now ripe for disposition.

---

[3] Similarly, an inmate intake form dated January 12, 2001 and completed subsequent to Curvan's arrest lists Curvan's father as "Gilks [sic]" and indicates that he is deceased. (Doc. 64, Ex. 5.) The form appears to have been completed by a health provider named K. Dinellern and not by Curvan himself. (Id.)

**II.    Standard of Review**

In a naturalization proceeding, the individual who is seeking to obtain the rights and privileges of United States citizenship bears the burden to prove by a preponderance of the evidence that he or she is eligible to become a United States citizen.  See Berenyi v. Dist. Director, INS, 385 U.S. 630, 637 (1967) ("[T]he burden is on the alien applicant to show his eligibility for citizenship in every respect."); see also Plewa v. INS, 77 F. Supp. 2d 905, 909 (N.D. Ill. 1999) (requiring proof by "a preponderance of the evidence").  All doubts as to eligibility for citizenship are to be resolved in favor of the government and against the individual seeking citizenship. Berenyi v. Dist. Dir., Immigration & Naturalization Serv., 385 U.S. 630, 637 (1967).

**III.   Discussion**

Curvan's claim of derivative citizenship arises from 8 U.S.C. § 1409(c), which provides, in pertinent part, as follows:

> [A] person born, after December 23, 1952, outside the United States and out of wedlock shall be held to have acquired at birth the nationality status of his mother, if the mother had the nationality of the United States at the time of such person's birth, and if the mother had previously been physically present in the United States . . . for a continuous period of one year.

Id.  The parties do not dispute that Curvan was born outside the United States after December 23, 1952, that his mother was a United States citizen on the date of his birth, or that she had previously been physically present in the United States for a continuous period of one year.  See Attorney Gen., 226 F. App'x at 249.  The only issue in dispute is whether Curvan was born "out of wedlock."  Id.  This legal

4

question will ultimately be decided by the Third Circuit; however, the underlying factual question of Curvan's paternity is at issue here.

Curvan seeks to establish by a preponderance of the evidence that R.E. Gilkes is not his biological father. See supra Part II. In support of his position, Curvan proffers the following: (1) the DNA evidence establishing that he and Hugh do not share the same father, (2) the averments of R.E. Gilkes's divorce petition, and (3) Gloria's recent sworn affidavit alleging that R.E. Gilkes is not Curvan's father. To support its contrary position, the government proffers the following evidence: (1) Gloria's marriage to R.E. Gilkes at the time of Curvan's birth, (2) the fact that R.E. Gilkes is named as Curvan's father on his birth and baptismal certificates, (3) Curvan's statements in his habeas petition that his mother "married [his] father on 3/22/1945" and in his inmate intake form that his father's surname was "Gilks," and (4) Gloria's sworn affidavit in support of Curvan's habeas petition in which she referred to R.E. Gilkes as Curvan's father.

Given the DNA evidence, the court would need to find that it was Hugh and not Curvan that was the product of an extra-marital affair in order to rule in favor of the government. The court is confronted with overwhelming evidence to the contrary, in the form of the averments of R.E. Gilkes's divorce petition and the recent affidavit proffered by Gloria. The Barbados court's findings establish that Gloria was engaged in an extra-marital affair at the time of Curvan's conception. The divorce petition also illustrates that R.E. Gilkes admitted fathering Hugh but did not admit the same with respect to Curvan. Because Hugh's paternity has not

been previously called into question, the court finds it difficult to adopt the government's suggestion that it was Hugh and not Curvan who was the product of an extra-marital affair. Moreover, Gloria affirmatively asserts that R.E. Gilkes is not Curvan's biological father. While the government questions Gloria's credibility as a result of her initial affidavit, the court does not. It is apparent that those statements reference R.E. Gilkes as Curvan's father in name only by virtue of Gloria's marriage to R.E. at the time of Curvan's birth. Curvan's statement in his habeas petition that his mother "married [his] father on 3/22/1945" carries the same context.[4] In addition, the court gives little weight to the prison intake form listing Curvan's father as "Gilks [sic]." There is no evidence that the form was actually completed by Curvan. Indeed, the misspelling of Curvan's surname, and the absence of any given name, renders it far more likely that the form was hurriedly prepared by an intake clerk.

In a final attempt to counter the evidence to the contrary, the government points to Gloria's marriage to R.E. Gilkes at the time of Curvan's birth in an effort to find safeharbor in a presumption of legitimacy. Even if such a presumption arises

---

[4] The record is unclear as to when Curvan became aware of his mother's extra-marital relationship as set forth in Document 61, Exhibits A through C.

here,[5] the court finds that the aforementioned evidence that Curvan was the product of an extra-marital affair is sufficient to rebut it.

**IV.** **Conclusion**

In light of all of the matters presented at hearing, the court finds that Curvan has established by a preponderance of the evidence that R.E. Gilkes is not his biological father. An appropriate order will issue.

      S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge

Dated:     February 25, 2008

---

[5] The following rebuttable presumption of paternity exists under Barbados Law:

> Unless the contrary is proven on the balance of probabilities, there is a presumption that a male person is, and shall be recognized in law to be, the father of a child in any one of the following circumstances -
> (a) the person was married to the mother of the child at the time of its birth .
> . . .

ZANIFA MCDOWELL, ELEMENTS OF CHILD LAW IN THE COMMONWEALTH CARIBBEAN 61-62 (2002) (citing Section 7 of the Barbados Status of Children Reform Act).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CURVAN WAYNE GILKES**, | : | **CIVIL ACTION NO. 1:03-CV-1417** |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **TOM RIDGE and BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT**, | : | |
| Respondents | : | |

## FACTUAL FINDING AND ORDER OF TRANSFER

AND NOW, this 25th day of February, 2008, upon consideration of the opinion of the United States Court of Appeals for the Third Circuit, see Gilkes v. Ridge, No. 06-1122 (3d Cir. May 22, 2007), remanding the above-captioned case for a determination of whether R.E. Gilkes is petitioner's biological father, and for the reasons stated in the accompanying memorandum:

1. The court finds by a preponderance of the evidence that R.E. Gilkes is not petitioner's biological father.

2. The Clerk of Court is directed to TRANSFER the above-captioned action to the United States Court of Appeals for the Third Circuit for consideration of the legal questions presented in the underlying petition for review.

3. The Clerk of Court is directed to CLOSE this case.

                                           S/ Christopher C. Conner
                                           CHRISTOPHER C. CONNER
                                           United States District Judge